UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE D. HEALY
o/b/o "TAH", an infant,

                                         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                                         Defendant.
_____

DECISION AND ORDER

18-CV-1050L

**PRELIMINARY STATEMENT**

Plaintiff Nicole D. Healy ("Healy"), on behalf of her minor son, T.A.H., who was born on February 18, 2002, appeals from a denial of Children's Supplemental Security Income ("SSI") by the Commissioner of Social Security (the "Commissioner"), based on the Commissioner's finding that T.A.H. was not disabled. This action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On December 16, 2014, Healy protectively filed an application for Children's SSI, alleging that T.A.H. was disabled as of February 18, 2003. (Tr. 234-39).[1] On May 7, 2015, the Social Security Administration denied Healy's application, finding that T.A.H. was not disabled. (Tr. 175-82). Healy requested and was granted a hearing before an administrative law judge. (Tr. 185-87). Administrative Law Judge William M. Weir (the "ALJ") held the hearing on June 2, 2017, at which both Healy and T.A.H. appeared and testified. (Tr. 131-62). In a decision dated

---

[1] References to page numbers in the Administrative Transcript (Dkt. ## 9, 15) utilize the internal Bates-stamped pagination assigned by the parties.

September 20, 2017, the ALJ found that T.A.H. was not disabled and was not entitled to SSI. (Tr. 110-30). On August 27, 2018, the Appeals Council denied Healy's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-7). Healy then commenced this action on behalf of T.A.H. on September 24, 2018, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently pending before the Court are the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 10, 17). For the reasons set forth below, Healy's motion (Dkt. # 10) is granted to the extent that this matter is remanded for further proceedings consistent with this decision, and the Commissioner's cross motion (Dkt. # 17) is denied.

## DISCUSSION

### I. Relevant Standards

Because T.A.H. is a child, a particularized, three-step sequential analysis is used to determine whether he is disabled. First, the ALJ must determine whether he is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924. If so, he is not disabled. If not, at step two, the ALJ determines whether the child has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment meets, medically equals, or functionally equals a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings"). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement he is disabled. If not, he is not disabled. *See* 20 C.F.R. §§ 416.924(b)-(d).

2

In assessing whether a child's impairments or combination of impairments functionally equal one of the Listings, the ALJ must measure the child's limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *See* 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). Medically determinable impairments will be found to equal a Listing where they result in "marked" limitations in two or more domains of functioning, or an "extreme" limitation in one or more. 20 C.F.R. §§ 416.926a(a), (d). A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i). An "extreme" limitation is "more than marked" and one which "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

The Commissioner's decision that T.A.H. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## II. The ALJ's Decision

Initially, the ALJ determined that T.A.H. had not engaged in substantial gainful activity since September 16, 2014 – the application date. (Tr. 113). The ALJ next found that T.A.H. had the severe impairments of attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and a learning disorder. (Tr. 113). The ALJ determined that these severe impairments, alone or in combination, did not meet or medically equal a Listing. (Tr. 114).

The ALJ also concluded that T.A.H.'s severe impairments did not functionally equal a Listing. (Tr. 114-18). In reaching this determination, the ALJ concluded that T.A.H. had less than

marked limitations in all functional domains except the domain of moving about and manipulating objects, in which T.A.H. had no limitation. (Tr. 118-23). The ALJ accordingly concluded that T.A.H. has not been disabled since September 16, 2014. (Tr. 123-24).

## III. Healy's Contentions

Healy argues that the ALJ's decision that T.A.H. is not disabled is not supported by substantial evidence and is the product of legal error. (Dkt. # 10). First, Healy contends that the ALJ's determination that T.A.H. did not meet Listing 112.11 was not supported by substantial evidence. (Dkt. # 10-1 at 4-5). Second, Healy maintains that the ALJ erred by affording "great weight" to the opinions of certain of T.A.H.'s teachers, yet failed to explain why he rejected portions of those opinions. (*Id.* at 5-6). Third, Healy argues that the ALJ improperly discounted the opinion of T.A.H.'s treating licensed mental health counselor, Sharese Robertson.[2] (*Id.* at 6).

## IV. Analysis

### A. The Opinion of Sharese Robertson, LMHC

I turn first to Healy's argument regarding the opinion of Sharese Robertson ("Robertson"), LMHC, because I find that the ALJ's consideration of her opinion affected several portions of the ALJ's determination. Healy argues that the ALJ improperly evaluated this opinion pursuant to Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006),[3] which deals with consideration of opinions from sources who are not "acceptable medical sources."

Robertson was a licensed mental health counselor who treated T.A.H. at Monsignor Carr Institute Children's Clinic ("MCI"). She completed a "teacher questionnaire" form on June 18,

---

[2] Healy refers to this provider as "Sharise Robinson" in her motion papers. However, the record consistently refers to her as Sharese Robertson, as does the Commissioner. I will refer to this provider as Sharese Robertson.

[3] SSR 06-3p was rescinded on March 27, 2017, effective for claims filed on or after that date. *See* Rescission of Social Security Ruling 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017). Healy filed the current claim prior to March 27, 2017, and therefore SSR 06-03p remains relevant. *See, e.g.*, Aaron T. v. Saul, 2019 WL 5149964, *4 n.6 (N.D.N.Y.), *report and recommendation adopted by*, 2019 WL 3543004 (N.D.N.Y. 2019).

2015, regarding T.A.H.'s abilities in the various functional domains. (Tr. 332-40). In the opinion, Robertson indicated that she met T.A.H. on July 29, 2014, and had seen him "at least [two] times monthly for individual counseling (mental health)." (Tr. 333). Robertson attempted to address with T.A.H. "managing ADHD, utilizing self-control, anger management, [and] coping with anxiety and depression." (*Id.*).

In relevant part, Robertson opined that T.A.H. had a "very serious problem" in all activities in the domain of acquiring and using information. (Tr. 334). These activities included: comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem-solving skills in class discussions. (*Id.*). Robertson noted that T.A.H. complained in their treatment sessions about "frustration with completing school work," and that he had "a hard time focusing and staying on task." (*Id.*).

Robertson also opined that T.A.H. had a "very serious problem" daily in all activities in the domain of attending and completing tasks. (Tr. 335). These activities included: paying attention when spoken to directly; sustaining attention during play/sports activities; focusing long enough to finish assigned activities or tasks; refocusing to task when necessary; carrying out single-step and multi-step instructions; waiting to take turns; changing from one activity to another without being disruptive; organizing own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; working without distracting self or others; and working at a reasonable pace/finishing on time. (*Id.*). She noted that T.A.H. had a "hard time focusing and concentrating," could "not stay focused long enough to complete

5

tasks," and "easily frustrated[,] which ha[d] effects on his academics." (*Id.*). She also indicated that T.A.H. was "sent out of class and misse[d] school work . . . refuse[d] to complete school work . . . [was] oppositional and d[id] not take directions well from teachers and adults." (*Id.*).

In the domain of interacting and relating with others, Robertson indicated that T.A.H. had a "very serious problem" daily in five of the thirteen activities associated with that domain, including seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting/obeying adults. (Tr. 336). Otherwise, T.A.H. had "no problem" to an "obvious problem" in this domain. (*Id.*). Robertson noted that T.A.H. had "limited self-control and [his] impulsivity ha[d] effect on behavior at school," and that his "behavior [was] not consistent." (*Id.*).

The ALJ assigned "little weight" to Robertson's opinion, which, in the ALJ's view, consisted of "extreme limitations in every childhood domain save moving about and manipulating objects." (Tr. 117).[4] In reaching this determination, the ALJ, without citing any evidence in particular, generally stated that Robertson's "treatment notes reflected [T.A.H.'s] improvement over the course of the period at issue, despite the negative impact that the child's parents' behavior has had upon him[.]" (*Id.*). The ALJ also indicated that the "reports of [T.A.H.'s] other teachers . . . contrast[ed] with Ms. Robertson's conclusions." (*Id.* (citing Tr. 293-302, 313-20, 344-55, 360-77)). Finally, the ALJ concluded that "Ms. Robertson [was] neither an acceptable medical source, nor [was] she a professionally trained educator, so [he was] constrained from assigning anything more than little weight to this well-intended opinion." (*Id.*).

---

[4] This characterization is not necessarily accurate. While Robertson opined that T.A.H. had a "very serious problem" in all activities in the domains of acquiring and using information and attending and completing tasks, her opinions in the remaining four domains, in fact, ranged from "no problem" to a "very serious problem," demonstrating that Robertson's opinion is not as "extreme" as the ALJ represented. (Tr. 336-39).

6

I find that the ALJ's weighing of Robertson's opinion was an error that requires remand for reconsideration. The ALJ correctly observed that a licensed mental health counselor is not an "acceptable medical source" under the regulations, but is instead an "other source," *see* SSR 06-03p, 2006 WL 2329939 at *2, and thus not presumptively entitled to controlling weight, *see Sirris v. Colvin*, 2016 WL 6090585, *3 (W.D.N.Y. 2016).

However, that does not mean, as the ALJ erroneously concluded here, that the ALJ was "constrained" from affording anything more than little weight to Robertson's opinion, who, the ALJ acknowledged elsewhere, was T.A.H.'s "treating counselor." (Tr. 117, 120, 121).

Opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939 at *3; *see also Patel v. Colvin*, 2013 WL 3873234, *5 (E.D.N.Y. 2013) ("the opinion of a non-medical source (or "other-source"), in regard to the key issues of impairment severity and functional effects, may be important and, in some cases, entitled to greater weight than an acceptable medical source in the Commissioner's determination"); *Kitt v. Astrue*, 2012 WL 1038627, *5 n.7 (W.D.N.Y. 2012) ("In fact, an opinion from a non-medical source who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source.") (alterations and quotations omitted).

Such opinions should also be weighed based on the same factors as acceptable medical sources, and the ALJ should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning." *Sirris*, 2016 WL 6090585 at *3 (citing S.S.R. 06-03p, 2006 WL 2329939 at *6); *see also Matthews v. Comm'r of Soc. Sec.*, 2018 WL 4356495, *5 (W.D.N.Y. 2018).

7

Accordingly, to the extent that the ALJ's decision can be read to have discounted Robertson's opinion simply because she was neither an acceptable medical source, nor a "professionally trained educator," I find the ALJ's reasoning to be error, particularly given Robertson's significant treating relationship with T.A.H.

In fact, treatment and progress notes from MCI make up a large portion the medical record. Those notes demonstrate that Robertson had one of the most lengthy and consistent treating relationships with T.A.H., having treated him from 2014 through May 2017. (Tr. 333, 868). Robertson is also the only provider from MCI to have completed an opinion regarding T.A.H.'s limitations in the functional domains. The ALJ does not acknowledge this significant treating relationship when considering Robertson's opinion. *See, e.g.*, *Gustafson v. Berryhill*, 2019 WL 4744822, *7 (D. Conn. 2019) (ALJ improperly discounted "other source" opinion by failing to discuss the frequency of the provider's interaction with claimant; "[t]he ALJ did not discuss [other source's] treating history with [claimant] or how the treating relationship factored into his decision to accord her opinions 'little weight'").

Moreover, and in any event, to the extent that the ALJ purported to evaluate Robertson's opinion based on the relevant factors discussed above, I find that his evaluation was flawed. Initially, the ALJ suggested that Robertson's opinion was not supported by her own treatment notes because her notes "reflected [T.A.H.'s] improvement over the course of the period at issue." (Tr. 117). Yet the ALJ cites no records for this proposition.[5] This lack of specificity in addressing Robertson's extensive treatment prevents the Court from conducting a "meaningful review of [the ALJ's] reasoning." *See Matthews*, 2018 WL 4356495 at *5 ("In particular, the ALJ

---

[5] In his papers, the Commissioner cites three records to support the proposition that T.A.H.'s condition improved when he used his medication over the course of Robertson's treatment. (Dkt. # 17-1 at 18-19 (citing Tr. 630, 634, 646)). However, based on this Court's review, all those records were signed by psychiatric nurse practitioner Deborah Valente ("Valente") – not Robertson.

8

indiscriminately cited no less than 150 pages of treatment notes from over a period of more than two years, making the conclusory assertion that [other source's] assessment was inconsistent with them. Given the length of time over and frequency with which [other source] treated [p]laintiff, the [c]ourt finds the ALJ did not meet his burden of properly explaining his rejection of [other source's] disability-supporting opinion."). It is also not clear the extent of T.A.H.'s improvement over the course of this treating relationship. (*See, e.g.*, Tr. 758 (November 2015), 820 (November 2016)).

The ALJ also stated that Robertson's conclusions "contrast[ed] with" the conclusions of T.A.H.'s teachers. (Tr. 117). As support, the ALJ cited teacher questionnaires from Sylvia Bailey ("Bailey"), T.A.H.'s seventh grade special education teacher (Tr. 293-302), James Spanbauer ("Spanbauer"), one of T.A.H.'s seventh grade teachers (Tr. 313-20), Fredia Cowart ("Cowart"), T.A.H.'s ninth grade algebra and global history teacher, (Tr. 362-66), and Maria Mauro ("Mauro"), T.A.H.'s ninth grade English and biology teacher and his primary case manager (Tr. 370-77), and T.A.H.'s 2016/2017, 2017/2018 Individualized Education Plan ("IEP") (Tr. 344-55).

The ALJ failed to adequately explain how Robertson's opinion contrasted with all this evidence. For instance, parts of Robertson's opinion are consistent, albeit not identical, with Cowart's evaluation, which the ALJ gave "great weight," in the domains of attending and completing tasks and interacting and relating with others. (Tr. 117-18).

In May 2017, Cowart opined, in relevant part, that T.A.H. had a "very serious problem" in eleven of the thirteen activities in the domain of attending and completing tasks. (Tr. 364). Cowart noted that T.A.H. was "unable to focus, sit still, or follow directions," and that he was "defiant and refuse[d] to complete assignments." (*Id.*). She also opined that T.A.H. had a "very serious

9

problem" in seven of the thirteen activities in the domain of interacting and relating with others, noting that T.A.H. had been removed from class, suspended, had his seat changed, and put in the time-out room. (Tr. 365). The ALJ credited this opinion because of Cowart's "daily interaction with [T.A.H.] in a classroom setting, h[er] professional training as an educator, and because this opinion [was] supported by the record." (Tr. 118). Without a more thorough explanation, I cannot say that Cowart's opinion contrasts with Robertson's opinion in these two domains.

In the domain of interacting and relating with others, Robertson's opinion also appears consistent – again, not identical – with the opinion of Mauro. In May 2017, Mauro opined that T.A.H. had a "serious problem" or "very serious problem" in six of the thirteen activities in this domain. (Tr. 373). The ALJ also assigned this opinion "great weight," based on Mauro's "daily interaction with [T.A.H.] in a classroom setting, h[er] professional training as an educator, and because this opinion [was] supported by the record." (Tr. 118). Mauro's opinion is not completely inconsistent with Robertson's opinion in this domain, as the ALJ states.

The ALJ also cited T.A.H.'s 2016/2017, 2017/2018 IEP as a record that contrasted with Robertson's opinion. That IEP indicated that T.A.H. was in a 12:1:1 special education classroom setting. (Tr. 347). As far as academics, the IEP reflected that T.A.H. exerted "very little" effort in reading during classroom lessons and activities, refused to participate in certain activities, and had little motivation. (Tr. 348). In Math, T.A.H. had difficulty, was easily distracted, and did not complete his assignments. (*Id.*). For writing, T.A.H. could get his ideas on paper, but struggled to start any kind of assignment, and required individualized, consistent monitoring by his teacher and classroom associate. (*Id.*). The IEP recognized that T.A.H. had "difficulty focusing" and that he needed "to be refocused and redirected many times during a lesson." (Tr. 349).

Furthermore, the IEP noted that T.A.H. had "social and behavioral issues that require[d] an additional adult in the room," and required "a highly structured learning environment where the rules and expectations [were] clear and concise" and "constant refocusing and redirection." (*Id.*). T.A.H. also "demonstrate[d] difficulty in all academic areas[,] [h]e ha[d] significant delays in oral reading, reading comprehension, written expression, mathematics calculation and reasoning which adversely affect[ed] academic performance[,] [and] [h]is off-task behavior and inattentiveness require[d] constant redirection and refocusing from the teacher." (*Id.*). Again, it is not clear how this IEP conflicts with Robertson's opinion; to the contrary, portions seem to bolster the opinion.

These teacher questionnaires and IEP demonstrate that T.A.H. had difficulty in school, both academically and behaviorally, particularly in the domains of attending and completing tasks and interacting and relating with others, which is not inconsistent with Robertson's opinion. At the very least, it is far from clear how all the records cited by the ALJ "contrast with" Robertson's opinion, and the ALJ's conclusory statement with nonspecific record citations fails to adequately explain his reasoning otherwise. This error precludes meaningful review of the ALJ's assessment of Robertson's opinion. *See, e.g.*, *Gustafson*, 2019 WL 4744822 at *7 ("Again, citing this 24-page exhibit as a whole makes the [c]ourt's review more difficult because the exhibit includes some treatment notes that are consistent with [other source's] assessments and the ALJ does not explain how he reconciled those notes with his ultimate determination that the exhibit is inconsistent with [other source's] opinions."); *Matthews*, 2018 WL 4356495 at *5.

I do not find this error to be harmless. The ALJ considered Robertson's opinion throughout his functional domain determinations, particularly in the domains of attending and completing tasks and interacting and relating with others. (Tr. 119-21). Reconsideration of this opinion, therefore, may impact how the ALJ assesses T.A.H.'s functional ability in these domains.

11

## B. Healy's Remaining Contentions

Healy also argues that the ALJ failed to sufficiently explain why he rejected portions of Cowart's and Spanbauer's opinions that were favorable to T.A.H.'s claim for disability when assessing the functional domains of attending and completing tasks and interacting and relating with others, despite affording those opinions "great weight." (Dkt. # 10-1 at 5-6). I agree that on remand, the ALJ should more adequately explain his reasoning for discounting portions of opinion evidence favorable to T.A.H.'s claim, particularly where the ALJ equally weighed such evidence.

The "ALJ must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence." *Frye ex rel. A.O. v. Comm'r of Soc. Sec.*, 2010 WL 6426346, *9 (N.D.N.Y. 2010). But where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Here, I am unable to glean the ALJ's rationale for crediting certain evidence in the domains of attending and completing tasks and interacting and relating with others over other evidence, particularly where the ALJ equally weighed the evidence at issue. *See Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 298 (W.D.N.Y. 2006) ("With no explanation provided, it is not possible for the [c]ourt to know why, when faced with differing but equally-weighted opinions . . . the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim.").

For instance, in the domain of attending and completing tasks, the ALJ stated that "[T.A.H.'s] treating counselor and Ms. Cowart each noted the child displayed very serious problems," but noted that "Mr. Spanbauer recognized the child's capacity in this domain, noting

that but for his choices to not complete his work or attend school, [T.A.H.] showed no more than an obvious problem in this domain." (Tr. 120). The ALJ then found that T.A.H. had less than marked limitations in this domain.[6]

Yet, as mentioned above, the ALJ gave "great weight" to the opinion of Cowart and Spanbauer for the same reason: they both interacted with T.A.H. daily in a classroom setting, they were trained professionally as educators, and the record generally supported their opinions. (Tr. 117-18). Given that both opinions were afforded equal weight for the same reasons, I find that the ALJ's adoption of Spanbauer's opinion, which was less favorable to T.A.H.'s claim than Robertson's and Cowart's opinions, without adequately explaining his decision to do so was error, and that the evidence of record does not otherwise permit this Court to glean the rationale of the ALJ's decision in this domain. *See, e.g.*, *Webb o/b/o W.I.C.B. v. Berryhill*, 2018 WL 3454687, *3 (W.D.N.Y. 2018) ("Because the ALJ failed to explain how he gave great weight to the teachers' opinion, yet failed to accept their conclusion that [claimant] has serious or severe limitations in not one, but three functional areas, the most prudent course of action is to permit the ALJ to revisit this matter to reassess the claimant's limitations in those functional areas.") (alterations and quotations omitted).

Similarly, the ALJ concluded that T.A.H. had less than marked limitations in the domain of interacting and relating with others. (Tr. 121). In reaching this decision, the ALJ acknowledged that T.A.H.'s "treating counselor and primary case manager both concluded that [T.A.H.] exhibit[ed] very serious problems in this domain." (*Id.*). As support, the ALJ not only cited the opinions of Robertson, the treating counselor, and Mauro, the primary case manager, but he also

---

[6] The ALJ also recognized in this domain that T.A.H. received psychotherapy, and recently stopped using prescription medication that he had used "with some improvement." (Tr. 120). As support, the ALJ cites a specific record reflecting that T.A.H.'s parents did not discipline him. (Tr. 828). It is unclear how that specific record supports the ALJ's statement regarding T.A.H.'s improved symptoms with medication.

13

cited the opinion of Cowart, which indicated that T.A.H. had a "very serious problem" in seven of the thirteen activities in this domain. (Tr. 365). However, the ALJ stated, "when counterbalanced by the daily observations of the child's other teachers, which showed no more than slight to serious problems . . . I conclude that the child was less than marked in this domain." (*Id.* (citing the teacher questionnaires of Bailey and Spanbauer)).

The ALJ assigned "great weight" to Mauro's opinion, based on her daily interaction with T.A.H. in a classroom setting, her professional training as an educator, and because her opinion was supported generally in the record. (*Id.*). However, as with ALJ's discussion in the domain of attending and completing tasks, it is similarly unclear from his reasoning why the opinions of Robertson, Mauro, and Cowart – all favorable to T.A.H.'s claim – were outweighed by the opinions of Bailey and Spanbauer. *See Webb o/b/o W.I.C.B.*, 2018 WL 3454687 at *3; *Dioguardi*, 445 F. Supp. 2d at 298.

Thus, "the most prudent course of action is to permit the ALJ to revisit this matter to reassess" T.A.H.'s limitations in these two functional domains. *Webb o/b/o W.I.C.B.*, 2018 WL 3454687 at *3.

Moreover, on remand, the ALJ shall reassess and more fully explain his decision that T.A.H.'s severe impairments did not meet the requirements for Listing 112.11, dealing with neurodevelopmental disorders. While the Second Circuit has stated that "the absence of an express rationale for an ALJ's conclusions [to find or not find a listed impairment] does not prevent [a court] from upholding them as long as [the court] [is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence," *Salmini v. Comm'r of Soc. Sec.*, 371 Fed. Appx. 109, 112 (2d Cir. 2010) (summary order) (quotations omitted), I find that not to be the case here.

14

As discussed at length above, the ALJ erroneously weighed Robertson's opinion evidence and failed to adequately explain his findings in certain functional domains. Accordingly, other portions of the ALJ's decision do not save the ALJ's otherwise conclusory finding that T.A.H. did not meet the severity criteria for Listing 112.11. This finding, then, is also deserving of reassessment on remand.

## CONCLUSION

For the reasons set forth above, I find that the ALJ's decision was not supported by substantial evidence. Healy's motion for judgment on the pleadings (Dkt. # 10) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. # 17) is denied, and the matter is remanded for further proceedings consistent with this decision.

On remand, the ALJ is directed to reconsider and reweigh the opinion of T.A.H.'s treating licensed mental health counselor Sharese Robertson in accordance with the appropriate regulations and guidelines, especially in light of her lengthy treating relationship with T.A.H., and provide a more detailed discussion of the consistency of Robertson's opinion with other record evidence.

The Court also observes that the evidence of record suggests the potential applicability of Listing 112.11 to T.A.H. Therefore, on remand, the ALJ is also directed to assess whether T.A.H. is disabled pursuant to Listing 112.11, and to provide a detailed discussion of each of the requirements of the Listing and the pertinent evidence of record.

Should the ALJ conclude that T.A.H. does not satisfy the requirements of Listing 112.11, the ALJ should reassess T.A.H.'s abilities in the various functional domains, taking into account his reassessment of Robertson's opinion. Specifically, the ALJ should provide sufficient

explanations for his decision to credit certain evidence over other evidence, such as teacher questionnaires, especially where such evidence is equally weighted.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 27, 2020.